CITY OF JACKSON *v.* LEWIS.*

(Division B. April 19, 1926.)

[108 So. 156.   No. 25663.]

1. MUNICIPAL CORPORATIONS. *Whether street at place of injury, caused when horse stepped into refilled ditch, was in reasonably safe condition held for jury.*

   In action against city for injuries received resulting to plaintiff when horse he was driving stepped into refilled ditch in street, evidence *held* sufficient relative to whether street was in reasonably safe condition to preclude directing verdict for city.

2. TRIAL. *Instruction that city is required to keep streets in good repair, although incorrect, in that city is only required to keep streets in reasonably safe condition, held not misleading, when construed with other instructions to that effect.*

   Instruction that city is charged with keeping streets in good repair, although subject to criticism, in that city is only required to keep streets in reasonably safe condition, *held* not misleadleading, when construed with other instructions outlining such requirement correctly.

3. APPEAL AND ERROR. *Instruction that city was liable for defective condition of street, if it could have been ascertained by city or any of its agents, although erroneous as charging city is bound by knowledge of its agents, held harmless, where evidence showed city inspector had actual knowledge of conditions where injury occurred.*

   Instruction that city was liable if it or any of its agents could have ascertained defective condition of street, although erroneous in charging that city was bound by knowledge acquired by agents, *held* harmless, in view of fact that evidence showed without conflict that city inspector had actual knowledge of how water main and sewer ditches, where injury occurred, had been filled, eliminating question of notice to city.

4. APPEAL AND ERROR. *Objection of variance between declaration and proof raised on motion for new trial was too late (Code 1906, section 808 [Hemingway's Code, section 596]).*

Under Code 1906, section 808 (Hemingway's Code, section 596), objection of variance between declaration and evidence, raised for first time on motion for new trial, was too late.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, p. 746, n. 15; 4CJ, p. 1029, n. 30; p. 1033, n. 37. Municipal Corporations, 28Cyc, p. 1363, n. 64; p. 1397, n. 27; p. 1398, n. 29; p. 1494, n. 87; p. 1498, n. 5; p. 1520, n. 34; p. 1532, n. 36. Pleading, 31Cyc, p. 777, n. 84. Trial, 38Cyc, p. 1778, n. 73; p. 1779, n. 75, 76.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by Turner Lewis against the city of Jackson. Judgment for plaintiff, and defendant appeals. Affirmed.

*Morse & Scott,* for appellant.

I. *The court should have directed a verdict in favor of the city of Jackson.* The duty and consequent liability of a municipality to keep its streets and sidewalks in a reasonably safe condition for persons traveling thereon extends to those cases where the obstruction or unsafe condition of the street is brought about by persons other than the agents of the city. In such cases the basis of the action being negligence, it devolves upon the plaintiff to show that the city had notice of the defect or might have had knowledge thereof by the use of reasonable care and watchfulness. See 28 Cyc. 1353; *Hattiesburg* v. *Reynolds,* 86 So. 853.

The testimony of Nash, who was a witness for the plaintiff, and the testimony of Williams, also a witness for the plaintiff, was to the effect that a ditch had been dug from June 25-28, but that this ditch was in good condition and the ground had been thoroughly tamped back.

The only theory on which plaintiff could recover is the theory of G. W. Ransom that the ditch was not properly filled. By taking into consideration that Ransom was positive that the ditch was constructed and filled

the same day that Turner Lewis fell into it, we would say that the plaintiff failed to bring home to the city of Jackson any responsibility for this action. There is no presumption of negligence arising from the happening of an accident by catching the foot in a sidewalk plank, as in *Union* v. *Heflin,* 104 Miss. 669, 61 So. 652.

II. *The court erred in giving instructions No. 1 and No. 2 for the plaintiff.* The first instruction announces the wrong principle of law. It states that the city is charged under the law with keeping its streets in good repair and free from any defects. Municipal corporations, not being insurers of the safety of those who use their streets, are required only to make them reasonably safe for persons of ordinary prudence. See *Vicksburg* v. *Hennessy,* 54 Miss. 391; *Nesbith* v. *Greenville,* 69 Miss. 22, 10 So. 452; *Butler* v. *Oxford,* 69 Miss. 618, 13 So. 629; *Meridian* v. *Crook,* 109 Miss. 700, 69 So. 182; *Higgensbottom* v. *Brunsville,* 113 Miss. 219, 74 So. 133; *Addkinson* v. *Dekatur,* 131 Miss. 707, 75 So. 689; *McComb* v. *Hyman,* 124 Miss. 252, 87 So. 11. The second instruction is defective in that it is incomplete.

*Chas W. Crisler* and *John Crisler,* for appellee.

The first assignment of error is that the court erred in failing to direct a verdict in favor of the city of Jackson. Under what known principle of law or fact appellant bases this contention is a mystery to us.

*Carver* v. *Jackson,* 82 Miss. 583, 35 So. 157, lays down the rule: "Where defects in a street were created by the city itself in the prosecution of a public work, and ordinary care would have discovered these defects, the city is chargeable with notice of them." The first assignment is, therefore, entirely without merit.

The next assignment of error discussed in the brief of the appellant is to the effect that the court erred in giving instructions Nos. 1 and 2 to the plaintiff. In-

struction No. 1 was predicated on the negligence of the city employees in failing to refill properly and tamp or pack the dirt in the water ditch; and if there is anything misleading about this instruction, we fail to find its significance. Appellant says, however, that the jury was mislead by this instruction for the reason that it is based on the hypothesis that the city of Jackson itself constructed the ditch. Appellant says further that even if the city had constructed the ditch, the instruction would be wrong as it announces the wrong principle of law. As stated, this instruction was asked for the very purpose of covering the probability of the plaintiff's having been injured by the unsafe condition of the ditch that was dug by the city of Jackson. *Carver* v. *Jackson, supra.* See, also, *Nesbitt* v. *City of Jackson,* 69 Miss. 22, 10 So. 452.

The city is liable for defects and it was its duty to watch the ditch to ascertain the condition of the refilled dirt so as to prevent it from becoming unsafe. Elliott on Roads and Streets, 645; 55 Mich. 552; *Donoho* v. *Vulcan Iron Works,* 75 Mo. 402.

If by reasonable care the city could have ascertained the unsafe conditions of the ditch, it was liable, although persons passing might not have observed the defects. 89 Mo. 226; 16 Kan. 338; 72 Ind. 196; *Vicksburg* v. *Mc-Clain,* 67 Miss. 4. In this connection see, also, *Whitfield* v. *City of Meridian,* 66 Miss. 570, 6 So. 244, 14 Am. St. 596, 4 L. R. A. 834; *City of Natchez* v. *Shields,* 74 Miss. 871, 21 So. 789 and the following cases cited with approval by counsel for appellant: *Meridian* v. *Crook,* 109 Miss. 700, 69 So. 182; *McComb* v. *Hyman,* 124 Miss. 252, 87 So. 11; *Higginbottom* v. *Burnsville,* 113 Miss. 219, 74 So. 135; *Fuel* v. *Meridian,* 90 Miss. 380, 42 So. 438, 9 L. R. A. (N. S.) 775.

Instruction No. 2, complained of by appellant, was given by the court to cover the situation in case injury was sustained because of the ditch dug by Nash and charges the correct principle of law in that "it is not

necessary for the city to have actual notice of the defect in the street due to a sewer ditch being dug (this ditch having been dug in this instance for another party under permit from the city), but if the jury believing from a preponderance of the evidence that the defendant, or any of its agents, could have ascertained its defective condition, if by the exercise of reasonable care, etc.,'' then the city is liable. *Miss. Cent. R. R. Co.* v. *Lott,* 118 Miss. 816, 80 So. 277; *Godfrey* v. *Meridian Ry. & Light Co.,* 101 Miss. 565, 58 So. 534.

There is absolutely nothing in this record justifying a reversal of this case, as unquestionably it was a question of fact for the determination of the jury, and was presented to the jury under proper charges from the court.

Argued orally by *W. E. Morse,* for appellant.

ANDERSON, J., delivered the opinion of the court.

Appellee, Turner Lewis, brought this action in the first district of the circuit court of Hinds county against appellant (which, for convenience, will be referred to as the city) for damages for a personal injury received by him while driving along one of the city's streets, which injury he alleged was caused by the defective and unsafe condition of the street. There was a trial and verdict and judgment for appellee in the sum of two hundred dollars from which the city prosecutes this appeal.

Wood street is one of the streets of the city running north and south. A water main ditch had been dug nearly across Wood street from the east side. This ditch was something like fifteen inches wide and eighteen inches deep. A sewer ditch had been dug from the west side of Wood street to about the middle of the street, where it met and probably overlapped the water main ditch. The sewer ditch was something like two feet wide and five feet deep. A water main was laid in the ditch dug for that purpose, and a sewer was laid in the

ditch dug for that purpose. The water main ditch was dug by the city itself. The sewer ditch was dug by a plumber, Nash, who had a permit from the city to do the work. After the ditches were dug and the water main and sewer pipe were laid, the ditches were refilled with dirt which had been taken therefrom in the process of their digging. After being refilled, the ditches had the appearance of being in good condition. There was nothing to indicate that they were unsafe to pass over with horse-driven vehicles.

Appellee at the time of his injury was driving his one-horse wagon along Wood street. He received his injury about five o'clock in the afternoon. On the same afternoon, and prior thereto, there had fallen a heavy rain. In crossing over one of these ditches (whether the sewer ditch or the water main ditch, being left uncertain by the evidence), the forefeet of his horse went down into the ditch entirely up to the breast and neck of the animal. Appellee at the time was standing up in the wagon driving. The sinking down of the forefeet and legs of the horse into the ditch caused the horse to lurch forward, thereby throwing a large part of the weight of his body suddenly on the reins held by appellee, causing the latter to be jerked over the front part of the wagon, resulting in serious injuries to him.

The ground of appellee's action was that the street at the place of the injury was not in a reasonably safe condition for the traveling public because the ditches had not been properly refilled and the dirt sufficiently tamped; otherwise the horse would not have sunk down into the ditch as he did, resulting in appellee's injury.

The city contends that the street was in a reasonably safe condition for the traveling public, and that there was no issue of fact for the jury as to whether that was true or not, and therefore it was entitled to a directed verdict in its favor; and if mistaken in that contention, that the trial court committed reversible error in the giving of two instructions for appellee, and also in overruling the city's motion for a new trial.

To sustain the position that the street was in a dangerous and unsafe condition, appellee relied on the undisputed facts in reference to the condition of the street at the place of the injury, in connection with the manner in which the injury occurred.

The city introduced its inspector, among whose duties was that of seeing that, when water main and sewer ditches were dug, they were properly refilled and tamped. He testified that both of these ditches were properly refilled and tamped; that he inspected them after the work had been completed, and was present while the sewer ditch was being refilled; and that in his judgment the work of refilling had been properly done; and that the street at that point was reasonably safe for the traveling public. The city introduced other witnesses who testified to the same effect. It is argued on behalf of the city that the evidence left no issue for the jury as to whether the street was in a reasonably safe condition. We think a complete answer to the city's contention is that the injury could not have taken place if the street had been in a reasonably safe condition. Appellee's horse could not have sunk down into the ditch up to its breast and neck if that was true. At most, the opinion testimony of the witnesses on behalf of the city to the effect that the ditches had been properly refilled and tamped only made a question for the jury. On the one hand, there were physical facts and the undisputed manner of the injury which tended strongly to show that, if the work of refilling and tamping the ditches had been properly done, the injury would not have occurred. On the other hand, there is the opinion evidence of witnesses that the refilling and tamping was properly done. We think under such evidence that the city was not entitled to a directed verdict.

It is true that, if appellee's horse sank down into the sewer ditch instead of the water main ditch, in order to hold the city liable it was necessary that the evidence show that the city either knew of the condition or could have known of it by reasonable diligence. But there is

no question of that character in this case, because the city admits that it had the ditch inspected after it was re-filled; in fact, its inspector supervised the refilling of it. Therefore whatever the condition of the ditch was the city had an opportunity to know of it. The water main ditch was dug by the city itself. But that was also in-spected by the city inspector who knew, or ought to have known, the manner in which it had been refilled.

The city assigns as error the giving of the following instruction for appellee:

"The court instructs the jury for the plaintiff that the defendant is charged under the law with keeping its streets in good repair and free from any defects in the same, and, if you believe by a preponderance of the evidence that the defendant or its agents dug the water ditch across Wood street, and failed to leave such in good condition as to the proper filling of the same, and the plaintiff was thereby injured, then you must find for the plaintiff, and assess his damages in such value as will reasonably compensate him for the injury sustained."

The principal criticism of the instruction is that it burdened the city with the duty of making the safety of its streets for the traveling public absolute; that instead of such a burden the city was only required to keep its streets in a reasonably safe condition for the traveling public. We think the criticism of the instruction, taken alone, is well founded, but, construed in connection with the other instructions in the case, it was not calculated to mislead the jury. The jury were told in at least one instruction for the city that the law only required that its streets be kept in a reasonably safe condition for the convenience of the traveling public. In another instruc-tion given for the city the jury were told that it was only required to exercise ordinary care in seeing that its streets were in proper condition. Construing all the instructions together, we do not think the jury could have been misled.

The giving of the following instruction is assigned as error:

"The court instructs the jury for the plaintiff that under the law it is not necessary for the defendant to have actual notice of the defect of the street due to a sewer ditch being dug, but, if the jury believes by a preponderance of the evidence that a defendant or *any of its agents* could have ascertained its defective condition, if any, by the exercise of reasonable care, then you must find for the plaintiff."

The main criticism of the instruction is that it told the jury that, if the city or *any of its agents* (italics ours) could have ascertained its defective condition by the exercise of reasonable care, the jury should find for the plaintiff. It is argued that the city is not bound by knowledge acquired by "any of its agents;" that it is only bound by the knowledge acquired by its agents acting within the scope of their agency. We think it is clear that the instruction was erroneous. However, it was without harm to the city, in view of the fact that the evidence shows without conflict that the city inspector had had actual knowledge of how the water main and sewer ditches had been filled. Therefore there was no question of notice to the city involved in the case. The city had notice through its authorized agent of exactly how the ditches had been refilled, and the error, therefore, in this instruction was wholly immaterial. It had no bearing on any issues the jury had to try so far as the clause criticized is concerned.

The city contends, further, that its motion for a new trial should have been sustained because there was a variance between the appellee's declaration and his evidence. The record does not reveal any objection made by the city to appellee's evidence, or any part of it, on the ground that it failed to sustain the declaration. It was too late to raise the question on motion for a new trial. Whatever variance there was between the declaration and proof was cured by the statute of jeofails. Section 808, Code of 1906 (section 596, Hemingway's Code).

*Affirmed.*