(No. 6650. May 27, 1939.)

P. C. O'MALLEY, Respondent, v. STATESMAN PRINT-ING CO. (a Corporation), Appellant.

[91 Pac. (2d) 357.]

Dean Driscoll, for Appellant.

P. C. O'Malley and F. M. Bistline, for Respondents.

HOLDEN, J.—The Idaho Daily Statesman is a morning newspaper composed, printed and published in Boise, Ada county, since May 20, 1889, by the Statesman Printing Co., a domestic corporation, having no office or agent in Bannock county. At the time the editorial was published, complained of by respondent, the Statesman had a circulation of not less than 7,000 in Ada county. It also circulated in all other counties of the state. For several years prior to May, 1937, respondent was manager of the State Insurance Fund of the State of Idaho, and during that period lived at Boise, but maintained his legal residence in Bannock county. May 27, the Statesman published an editorial concerning respondent's conduct of that Fund. April 15, 1938, respondent commenced this action to recover damages against the Statesman Printing Co. on a charge of libel based upon publication of the editorial. May 9, 1938, appellant filed a general demurrer to respondent's complaint, as well as a demand and motion for a change of place of trial of the cause from Bannock to Ada county. The motion was supported by affidavit and opposed by counter affidavit. The affidavits, however, are not thought to be in conflict on the single question presented by the record on appeal. Sept. 3, 1938, the trial court entered an order denying the publishing company's motion for a change of

the place of trial from Bannock to Ada county. October 20, 1938, an appeal was taken from the order so entered. The decisive question presented by the record is as to where, or in what county, respondent's cause of action, if any, arose. That is a new question in this state, insofar as the venue of an action for libel against an incorporated newspaper is concerned.

"Appellant's contention, briefly stated is, that under the circumstances here involved the paper is published, hence the cause of action accrues, at the place and in the county from which it is issued and distributed, and not in another county into which it is merely sent, distributed or circulated. In other words, that there is but one publication, which occurs at the original place of issuance and distribution, and the circulation of copies thereafter goes only to the enhancement of damages but does not give rise to additional causes of action."

On the other hand, respondent contends:

"It is immaterial whether there is 1 or 10,000 causes of action, there is one cause of action in each and every county where defendant circulated its paper, and in whatever county plaintiff files his cause of action, the district court of that county has jurisdiction in that case all over the state." That contention is based upon the theory, if we understand respondent correctly, there was a distinct, separate and independent publication at each place and in each county of the state where, for instance, a single copy of the paper was circulated and read, and that there were as many distinct, separate and independent causes of action as there were copies of the paper circulated.

That part of sec. 5-404, I. C. A., pertinent here and upon which the publishing company based its motion for a change of venue, follows:

"And provided, further, that in all actions against any corporation organized under the laws of the State of Idaho, suit or action shall be commenced and tried in any county of this state where the defendant has its principal place of business or in the county in which the cause of action arose."

Respondent's contention that the distribution and circulation of each copy of the paper constituted a dis-

tinct, separate and independent cause of action in each county of the state where circulated and read, and that a civil action for libel could be brought in each and all of such counties is untenable. However, at the common law, a civil action for libel could be brought in *any* county in which the paper was circulated. (*Haskell v. Bailey*, 63 Fed. 873, 11 C. C. A. 476, 25 U. S. App. 99; *Vitolo v. Bee Pub. Co.*, 66 App. Div. 582, 73 N. Y. Supp. 273; *Pinkney v. Collins*, 1 T. R. 571, 99 Eng. Reprint 1257; *Blackburn v. Cameron*, 5 Ont. Pr. Rep. 341; *Irvine v. Duvernay*, 4 Quebec L. R. 85.)

The common law rule, however, was abrogated by statute (sec. 5–404, *supra*), in that under it the action must be brought in the *particular* county, and in that county *only*, in which the cause of action arose. Under the statute, then, in what county of the state did respondent's alleged cause of action arise?

The answer to that question can not be found in any of the authorities cited by either appellant or respondent in that no case is cited by either in which the court construed a venue statute like that under consideration in the case at bar. The authorities cited other than the common law cases not applicable here, construe venue statutes unlike sec. 5–404, *supra*. To illustrate by examples, we have selected *Age-Herald Pub. Co. v. Huddleston*, 207 Ala. 40, 92 So. 193, 37 A. L. R. 898, construing an Alabama statute, cited by appellant and *Tingley v. Times-Mirror Co.*, 144 Cal. 205, 77 Pac. 918 (cited by respondent), construing sec. 16, art. 12 of the Constitution of that state, reading:

"A corporation or an association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises or the breach occurs, or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases."

Tingley resided in San Diego county where he commenced an action for libel against the Times-Mirror Co. which had its residence and principal place of business in the City of Los Angeles, Los Angeles county. The publishing company moved to change the place of trial from San Diego to Los Angeles county where the newspaper was actually

composed, printed and published. The company contended the case was one where the wrong complained of consisted of printing, publishing and distributing the alleged libelous article, which it was claimed was done in the City of Los Angeles. The court said it could not agree with the contention, saying:

"A corporation formed to publish a newspaper, whose circulation is by the publisher extended into counties and places other than that of the principal place of business of the corporation, is in a position to commit an injury by a libelous publication precisely as the electrical or water corporation or railroad company that extends its lines of operation beyond the boundaries of its residence or principal place of business is in position to commit an injury in effecting its objects. The newspaper corporation avails itself of the United States mails, the express companies, the railroad companies, and other established lines of communication and dissemination, to broadcast its publication. These means of communication with the general public by the newspaper are in practical effect the same as the means used by railroad companies, water and electrical companies, to reach their patrons. The liability arises where the injury occurs, and the injury in the case of libel is peculiarly at the county in which the plaintiff resides, if, as is alleged, the plaintiff has published and circulated the libelous article there; and there it is that plaintiff is most injured by the publication."

The following is the only provision of sec. 16, art. 12, *supra,* pertinent to this discussion: "A corporation . . . . may be sued in the county where the . . . . liability arises . . . . subject to the power of the court to change the place of trial as in other cases." Venue is made to depend upon the county in which the *liability* arises, subject nevertheless, "to the power of the court to change the place of trial as in other cases," so the "liability" provision was not controlling because it is also expressly provided the court shall, notwithstanding that provision, have power "to change the place of trial as in other cases," a power not conferred by the *proviso* in our statute, above quoted. Furthermore, the county in which a *liability arose,* either for an injury by

libel or otherwise, *could not be decisive* on a motion to change the place of trial, if the court could (as it is expressly authorized to do), regardless of that fact, change the place of trial.

Huddleston (*Age-Herald Publishing Co. v. Huddleston, supra*), a resident of Jefferson county, Alabama, commenced an action for libel in the circuit court for Blount county against the publishing company, whose residence and principal place of business was located at Birmingham, in the same county. The company challenged the jurisdiction of the circuit court for Blount county. It contended "That the printing, publishing and mailing of its papers at Birmingham, though it resulted proximately and necessarily in their circulation and exposure in other counties, including Blount, effected a complete publication of the alleged libels in Jefferson county, and that their subsequent circulation and exposure in other counties were not separate publications of the libels constituting independent and separately actionable wrongs, but were mere elements of *damnum* growing out of the primary wrong which occurred in Jefferson county, where both plaintiff and defendant reside, and where the venue must therefore be laid."

The court said:

"What we have to determine is not what was the common law of venue in libel suits, but what is the statutory law of venue in Alabama, as prescribed by Sec. 6112 of the Code: 'A foreign or domestic corporation may be sued in *any county* in which it does business by agent; but all actions for personal injuries must be brought in *the county* where the *injury occurred,* or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence.' "

"It is clear that the word 'injury'—in the Latin, *'injuria'*—in the phrase 'where the injury occurred,' is used in its proper legal sense of wrong; importing, of course, a wrongful act or omission. 'Damage,' the result of the wrongful act—technically called the *'damnum'*—is a correlative term of wholly distinct meaning and application. The significance of the terms 'injury' and 'damage' is sharply contrasted

in the familiar legal phrases, *'damnum absque injuria'* and *'injuria sine damno.'* (Citing cases.)''

After further discussion, the court held:

''Summarizing our conclusions, as above indicated, we hold that, in an action for libel against a newspaper, the injury—the breach of duty—occurs, within the meaning and application of the venue statute, at the place where the newspaper is primarily published, and not in other places where it is secondarily published,—that is, merely circulated: that under the allegations of the pleas in abatement, the places of primary publication, and the *locus* of the injury, was Birmingham, in Jefferson county; and that this action could be prosecuted only in Jefferson county.''

We return to our question: In what county of the state did respondent's alleged cause of action arise?

 Appellant and respondent appear to be in agreement on the proposition that it is the ''publication'' of a libelous article which gives rise to a cause of action and not its preparation. Therefore, what constitutes *publication?* It was said in the Age-Herald case, *supra* (relied upon by appellant), that ''to 'publish' a libel in the sense of doing a civil wrong, is to make it known to any person other than the person libeled.'' The definition of the word given by Words and Phrases (relied upon by respondent), Vol. 3, 4th Series, p. 280, is: ''Publication. In ordinary acceptance, to make public, make known to people in general, to bring before the public, to exhibit, display, disclose, or reveal.''

 When, immediately after being put in type, the editorial was printed in the Statesman and 7,000 copies circulated in Ada county, it necessarily was thereby made public—brought before the public—which under the definition relied upon by respondent, clearly constituted a ''publication'' of the editorial, from which it follows there was an actual *publication* of the article at Boise, in Ada county, no matter whose definition of the word ''publication'' is accepted—appellant's or respondent's.

Furthermore, respondent's complaint is based, as will presently appear, primarily upon the injury he alleges the publication of the editorial worked *particularly* to his reputation throughout the State of Idaho as an able and efficient

manager of the State Insurance Fund, in that connection alleging its publication tended to bring about his removal from office at a loss to him of a salary of $250 per month. He avers that on the 18th day of May, 1937, he was re-appointed manager of the State Industrial Insurance Fund, the appointment to terminate Dec. 31, 1938, "at a salary of $250 per month, and in such capacities and as such lawyer and particularly as Manager of the State Industrial Insurance Fund during the six years of plaintiff's management, plaintiff had a very wide acquaintance and good reputation, as to honesty, integrity and reputation, and as to competency and ability, and particularly had a good reputation as an able and efficient manager of the State Industrial Insurance Fund, throughout Bannock county, and throughout the entire State of Idaho, and in adjoining states, with employers, employees, attorneys, physicians, surgeons, osteopaths, chiropractors, claimants and the public generally, and had the confidence and respect of, and was recognized by all said mentioned persons and professions, and all of the public in general who came in personal contact with him, as being a capable, courteous, qualified and efficient manager of said State Industrial Insurance Fund, possessing the experience, temperment, ability, honesty and integrity to manage said fund, as far as humanely possible to do so, and was on the 27th day of May, 1937, well known and respected, of good reputation and high standing, throughout Bannock county, and in every other county of the State of Idaho, and in adjoining states, as lawyer and as a man, and *particularly* (emphasis mine) had the reputation of competently managing the State Industrial Insurance Fund."

Respondent further alleges appellant "without any probable cause, and without any justifiable motive, but with express malice and ill will toward this plaintiff, and with the purpose and intention to injure this plaintiff, contriving, falsely and maliciously designing and intending to, and thereby *did then and there intend to impeach the character, honesty, integrity, reputation and ability of the plaintiff as manager of the State Insurance Fund of the State of Idaho* (emphasis mine), and to impeach his honesty, integrity and

good reputation as a lawyer, and as a man and to injure and wound his pride and feelings and thereby tend to expose him to unjust criticism, contempt, odium, ridicule and humiliation, and to tend to blacken his name and his record as Manager of the said fund, and as a lawyer, and as a man, tend to injure and destroy public confidence in him in said capacities and *purposely and intentionally tend to injure and discredit him in his position as Manager of the State Industrial Insurance Fund, and tend to cause his removal from said position, did compose and cause to be printed*" the editorial hereinbefore mentioned. (Emphasis mine.)

If the rule announced in the Tingley case, *supra*, is the correct rule to apply here, as contended by respondent, to-wit, that *liability* arises in the county in which "plaintiff is most injured by the publication" of the article, then and in that case, "liability" necessarily arose in Ada county in that if respondent was *particularly* injured in his reputation by the publication of the editorial, "with employers, employees, attorneys, physicians, surgeons, claimants, and the public generally, and had the confidence and respect of, and was recognized by all said mentioned persons and professions, and all the public in general who came in personal contact with him, as being a capable, courteous, qualified and efficient manager of said State Industrial Insurance Fund," it follows he must have been "most injured" in Ada county.

On the question as to whether an action for libel against a New York newspaper (*Wolfson v. Syracuse Newspapers, Inc., Fourth Dept.*, 254 App. Div. 211, 4 N. Y. Supp. (2d) 640) was barred by the statute of limitations, the court said:

"The number of separate publications of the alleged libel and the causes of action arising thereon in plaintiff's favor were not gauged by the number of copies of the single edition in which the articles appeared and which the defendant circulated by sale or otherwise . . . . in the publication of a defamatory article in a newspaper publicly circulated there is but one publication and that at the place where the newspaper is published."

And in *Fried, Mendelson & Co. v. Edmund Halstead, Ltd.*, 203 App. Div. 113, 115, 196 N. Y. Supp. 285, 287, where the complaint alleged publication of the same libel to an employee of plaintiff, to defendant's stenographer, and to merchants in the United States and England, and otherwise, it was held but one cause of action was stated, and not separate causes which the plaintiff could be required to separately state, the court saying:

" . . . . There was but a single publication here of a single defamatory article, although made to different persons. (Citing authorities.) If the defendant appellant is right in his contention that there were several causes of action alleged in plaintiff's complaint, there would be as many causes of action against a newspaper for publishing a defamatory article as there were readers of the objectionable article.''

It is common knowledge newspapers are widely circulated and read. In the case at bar, copies of the Statesman containing the editorial in question circulated in all the forty-four counties of the state—not less than 7,000 in Ada county and approximately 70 in Bannock. Assuming, but not conceding each copy of the paper circulated would constitute a distinct, separate and independent *publication* and, therefore, a distinct, separate and independent cause of action, as contended by respondent, our statute would provide forty-four different venues, and as many separate causes of action as there happened to be papers circulated and read in each county—in Ada county alone respondent's causes of action would amount to at least 7,000 as a result of publishing the editorial in a single edition of the paper. Is it not reasonably clear, then, that the legislature intended there should be but one venue and that in the county where the newspaper was published, no matter in how many other counties the paper might be circulated and read? Furthermore, while our statute and the Alabama statute are not phrased alike, the reasoning of the Alabama court in the Age-Herald case, *supra,* is very persuasive on the point under discussion. The court says:

"It is difficult to see how a single cause of action, complete at one place, and fully accrued, can subsequently 'accrue' in another place, or in many other places, for the purpose

of acquiring a new venue, and yet without being a new and distinct cause of action, unless of course, the statute is to be construed as meaning that the same cause of action reaccrues whereover its operation may be extended and results in additional damage or hurt. But that would be the accrual of additional damage merely, and not the accrual of a cause of action, as we shall show later on.''

'' .... We do not see how there can be any conflict of opinion as to the unfairness, injustice, or impolicy of permitting aggrieved persons, in this class of cases only, to select at their pleasure any judicial forum within the state where the political, religious, industrial, moral, or personal predilections of the local citizenship may readily furnish a jury whose biased views will probably be reflected, however sincerely, in a verdict favorable to them.''

It follows from what has been said the order appealed from must be reversed and the cause remanded. It is so ordered, with directions to the trial court to grant appellant's motion for a change of the place of trial. Costs awarded to appellant.

Budge and Givens, JJ., concur.

Ailshie, C. J., did not sit at the hearing, nor participate in the decision herein.

STEVENS, D. J., and MORGAN, J., Dissenting.—The motion for change of venue is based on that part of I. C. A., sec. 5-404, reading as follows:

'' .... and provided, further, that in all actions against any corporation organized under the laws of the State of Idaho, suit or action shall be commenced and tried in any county of this State where the defendant has its principal place of business or in the county in which the cause of action arose.''

The paper containing the alleged libelous matter was circulated and published in Bannock county, and the cause of action arose therein if the article was libelous. The under-

scored portion of the quoted statute is the part which calls for construction.

The rule is stated in 17 R. C. L. 370, sec. 120, as follows:

"Civil actions for libel are transitory in their nature, and it is very generally held that such an action may be brought in any jurisdiction where the libelous article was published or circulated, even though the article was written or printed elsewhere."

(See, also, 37 C. J. 18, sec. 320; *Tingley v. Times-Mirror Co.,* 144 Cal. 205, 77 Pac. 918; *Buck v. James McClatchy Pub. Co.,* 105 Cal. App. 248, 287 Pac. 364; *Oklahoma Pub. Co. v. Kendall,* 96 Okl. 194, 221 Pac. 762; *State v. District Court,* 129 Okl. 210, 264 Pac. 154; *Louisville. Press Co. v. Tennelly,* 105 Ky. 365, 49 S. W. 15, 20 Ky. Law Rep. 1231.)