FORMAN *v*. MISSISSIPPI PUBLISHERS CORPORATION.

(In Banc.   June 14, 1943.)

[14 So. (2d) 344.   No. 35385.]

Frank E. Everett and Neill, Clark & Townsend, all of Indianola, for appellant.

92

96

Watkins & Eager and Watkins & Avery, all of Jackson, Cooper & Thomas and P. W. Allen, all of Indianola, for appellee.

98

Argued orally by **Frank E. Everett**, for appellant, and by **W. H. Watkins**, for appellee.

**Alexander, J.,** delivered the opinion of the court.

Appellant brought suit against the appellee to recover damages arising from an alleged libel published editorially in its newspaper. The paper is published in the first judicial district of Hinds County, and the plaintiff resides in Sunflower County where it is alleged the paper was circulated. There was joined as a defendant a resident of the local county, who, under a contract with defendant, purchased and sold the paper as a news dealer and whose duties required her to augment its circulation locally by procuring new subscribers. She purchased a limited number of copies and was free to dispose of them as she saw fit, without the right to refund for unsold copies.

A plea in abatement was filed setting up that the local dealer was not an agent or servant of appellee; that she had no knowledge of the contents of the paper; and, for further reasons therein set forth, she was joined as a defendant not for the purpose of seeking a judgment against her but in order to fix venue in Sunflower County. She filed no plea or defense but no judgment in default was taken against her.

We do not detail the evidence by which it was sought to show that no judgment was sought against the local defendant and that her joinder was solely to establish venue locally. We find no reason to overturn the finding

of the trial judge that under the evidence this joinder was not of itself effective to fix venue in Sunflower County.

Such proceeding in cases of frivolous or fraudulent joinder is proper where jurisdiction over the remaining defendant is dependent upon the issue raised by the plea. Gasquet v. Fisher, 7 Smedes & M. 313, 15 Miss. 313; Trolio v. Nichols, 160 Miss. 611, 612, 132 So. 750, 133 So. 207; McRae v. Ashland Plantation Co., 187 Miss. 350, 192 So. 847.

That this procedure must be limited to such circumstances should not be left to inference. Accordingly, we take occasion to guard against its abuse by denying its propriety in cases where it is sought to thresh out the merits of plaintiff's case by piecemeal. Between those cases where, on the one hand, a defendant is admittedly or obviously joined to confer jurisdiction and where, on the other hand, judgment is confidently and in good faith sought against all defendants upon grounds of prima facie liability, there may hover doubtful cases against which an adverse presumption as to the propriety of this precedure should be indulged.

In view of the fact that the sole remaining defendant is a corporation having its place of business in the first judicial district of Hinds County, the court held that it must be sued, if at all, in that district, and the cause was dismissed without prejudice.

The venue is to be determined from a construction of Code 1930, Section 495, Amended by Chapter 248, Laws 1940: "Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found, and if the defendant is a domestic corporation, in the county in which said corporation is domiciled, or in the county where the cause of action may occur or accrue . . . " The defendant, although a foreign corporation, has appointed a resident agent and is subject to the same rights and disabilities as to venue as are domestic corporations. Sandford v. Dixie Construction Co., 157 Miss. 626, 128

So. 887. The newspaper here involved is edited, composed and issued in Hinds County. It is also, in both a popular and technical sense, there published. The question therefore further narrows to a construction of the quoted statute which requires venue in the county "where the cause of action may occur or accrue."

The range of our examination must be circumscribed by principles involving libel by newspaper. We thus avoid complexities inherent in communications by the telegraph, sealed letters, radio and cinema, some of which have built up a separate body of law, while others are confused with the chaos which always obscures questions which are in a formative state. See F. H. Bohlen, 50 Harvard Law Rev. 725, 728; Restatement, Torts, Vol. 3, Section 577 and caveat, p. 196. Principles indigenous to these activities are unsuitable material for analogy. Nor are principles of common law applicable in view of our statute, to which we now return for construction.

Citation from neither judicial decision nor lexicon is needed to support the view that a cause of action "accrues" when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. The copies of the newspaper containing the alleged libel were published and first circulated about noon in the City of Jackson in Hinds County, the domicile of the publisher. Copies were distributed by conveyance and otherwise to other parts of the state, reaching the home of plaintiff in the late afternoon.

Did the cause of action "accrue" in Hinds County? A negative answer is impossible. If but one copy of the paper had been issued, or if all copies had been restricted to Hinds County, the cause of action would not only have there accrued, but the extent of the damage would have been limited largely to its local effect. If plaintiff were a resident of the county of publication, he would no doubt vigorously assert and be not gainsaid that a cause of action had occurred and accrued there. If, therefore, it accrued where first published, the circulation in Sun-

flower County may not alter this simple fact, and the only theory upon which the statute may be turned to plaintiff's use is to hold that a new and separate cause of action accrued in Sunflower County. The logical conclusion of this reasoning is that a cause of action, although set in motion in Jackson, multiplies as the widening circles of its distribution expand, creating new causes of action throughout the land and to the uttermost parts of the earth. To argue upon some theory of a reaccrual is to presuppose its original accrual in Hinds County. It is not helpful to consider merely that plaintiff suffered his greatest damage in the county of his residence. He may not ignore the origin of the injury and arbitrarily fix its genesis at the moment when it first invaded its own county. The matter must not be studied with an eye to the advantages or disadvantages to either party in the application of a sound rule. Otherwise, a plaintiff may be left free to choose his own forum, subject to guidance by considerations of local prejudice for and against himself or the defendant. We must assume that the legislature ignored these irrelevancies or devitalized them by establishing a venue which works for an orderly procedure, thereby requiring the courts to hew to this line, indifferent to the fall of its administrative chips on one side or the other.

We do not mean that the cause of action is not enlarged by an expanding circulation. Such fact is always relevant upon the issue of quantum of damages. The situs of plaintiff's damage may be proven to be chiefly in the county of his home where the mutilation of repute would reach its maximum. But we are dealing, not with the centrifugal forces which operate to multiply injury by dissemination, but with the centripetal forces which fix venue at its axis or center of origin.

We must trace our path carefully past those decisions dealing with republication in a legal sense, which is a repetition or republishing by third persons, or a second and distinct writing by the same person. We must dis-

tinguish between multiplied damage and multiplied venue. A victim of assault may be injured by repeated blows upon different parts of his body, inflicted by both tooth and nail of his assailant. Yet, it is but one assault, and one composite injury which may not be dissected into as many incidents as there were violent fangs or fingers.

In defamation, the assault is not directly upon the plaintiff but upon his public esteem. The impact is upon those who are custodians of his reputation. Such reputation, which is the sum total of popular regard, is injured as soon as a destructive fire of criticism ignites the edifices in which such prestige is housed. The searing power of such contact may spread rapidly from accumulating sparks and become progressively destructive. Indeed, the analogy to arson is not inapt, and our analysis of the tort here ought to be as free from unnecessary subdivision. Like arson, it consists not in the successive burning of each separate support in the structure, but the blackening and burning by a fire which, although continually reproducing itself, remains nevertheless the same fire. There are not as many fires as there are successive planks, each of which borrows flame from its fellow. Nor may one withhold its characterization as arson until the conflagration reaches the room which he occupies.

A newspaper's power for good or evil is undoubtedly large, but its responsibility for libel is thereby made intensive and not extensive. The principle is implicit in the distinction between the power of, let us say, forty separate horses and forty horsepower. Its arm has a long reach, with power both to write and to broadcast the writing in a thousand identical sheets. It has but one voice, and here spoke but once, even though its echoes reverberated throughout the land. One set of type may reproduce its message in countless facsimiles, but we can not assent to a principle which would multiply the causes of action by the number of its readers. Plaintiff contends that when the paper reached his home county, it was published there and created a new cause of action. Yet, it

is not as relevant that it was delivered to a new geographical area as that it reached other readers. So that the contention, after all, is that a new cause of action arises with each reader. Such view leads to many impractical conclusions, not the least untenable of which is that, even if the circulation were restricted to a single county, a plaintiff could enlarge his declaration so as to include as many counts as there were subscribers.

We reach these conclusions not under the questionable guidance of mere a priori reasoning. We find that there is ample support in the decisions of our courts. There seems to be no doubt that the statute of limitations begins to run from the date of the first publication. Means v. MacFadden Publications, Inc. (D. C.), 25 F. Supp. 993; Cannon v. Time, Inc. (D. C.), 39 F. Supp. 660. It is evident that had this newspaper been published on one evening and had reached the county of plaintiff after midnight, the cause of action would accrue on the preceding day the statute of limitations would date therefrom. Since the gravamen of the offense is not the knowledge by the plaintiff nor the injury to his feelings but the degrading of reputation, the right accrued as soon as the paper was exhibited to third persons in whom alone such repute is resident. Cf. McCarlie v. Atkinson, 77 Miss. 594, 27 So. 641, 78 Am. St. Rep. 540. The tort is then complete even though the damage may continue or even accumulate. Wallace v. Southern Express Co., 7 Ga. App. 565, 67 S. E. 694; Galligan v. Sun Printing & Pub. Ass'n, 25 Misc. 355, 54 N. Y. S. 471; Odgers, Libel & Slander (5 Ed.), p. 375; Gatley, Libel & Slander (5 Ed.), p. 623. There is here but one publication and that is where the paper is published. Wolfson v. Syracuse Newspapers, Inc., 254 App. Div. 211, 4 N. Y. S. (2d) 640; Fried, Mendelson & Co. v. Edmund Halstead Ltd., 203 App. Div. 113, 196 N. Y. S. 285. The cause of action accrues where the paper is first published. Houston v. Pulitzer Pub. Company, 249 Mo. 332, 155 S. W. 1068. In Missouri Pac. Transportation Company v. Beard, 179 Miss. 764, 176

So. 156, an auditor for appellant had made a report containing libelous matter against appellee. The superintendent of the company predicating a letter upon this report wrote a letter recommending the discharge of appellee upon the ground set out in the report. We held that plaintiff should have declared not upon the letter but the original report.

The infection by which a trivial harm may become gangrenous or even fatal is not an occurrence or accrual but a consequence. There should be no doubt that if the offending article had been brought to attention in Sunflower County more than a year after its initial publication, suit thereafter would be barred by our statute of limitations.

In Grenada Bank v. Petty, 174 Miss. 415, 164 So. 316, the question presented was where the cause of action accrues in a suit for malicious prosecution. It was held that such cause accrued as soon as the last requisite element, the acquittal of plaintiff, came into existence. The other and preliminary factors, the affidavit, arrest and prosecution furnish analogies to the preparation of the editorial, its setting up in type and its impression upon paper.

In O'Malley v. Statesman Printing Co., 60 Idaho, 326, 91 P. (2d) 357, the facts were similar to those here present, and the contentions identical with those of appellant. The court held that in actions of libel by newspaper, the cause of action arose in the county of the domicile of the newspaper and that as regards venue, the publication was made in such county and the venue thereby fixed. So also in Galligan v. Sun Printing & Pub. Ass'n, supra; Murray v. Galbraith, 86 Ark. 50, 109 S. W. 1011, 126 Am. St. Rep. 1078; Houston v. Pulitzer Pub. Company, supra. The last cited case presented the issue squarely and overruled former decisions which were in accord with appellant's contentions.

Age-Herald Pub. Company v. Huddleston, 207 Ala. 40, 92 So. 193, 197, 37 A. L. R. 898, is directly in point and supports the views herein expressed. The contentions of

appellant are there fully answered. The court stated: "With respect to the basis of venue here under consideration, it (the statute) reads, more respectively, 'in the county where the injury occurred'—not in any county where the injury occurred, nor in any county where the injury was repeated or duplicated merely. This is significant—highly significant we think—of a legislative conception of a single venue to be determined by the locus of a primary wrongful act; and not of a multitude of venues to be created by mere repetitions or secondary extensions of the primary act. . . . We do not see how there can be any conflict of opinion as to the unfairness, injustice, or impolicy of permitting aggrieved persons, in this class of cases only, to select at their pleasure any judicial forum within the state where the political, religious, industrial, moral, or personal predilections of the local citizenship may readily furnish a jury whose biased views will probably be reflected, however sincerely, in a verdict favorable to them."

We do not find adequate support for a contrary view in the authorities cited by appellant. Each must be appraised in the light of the particular venue statutes involved. We need only construe the term "where the cause of action may occur or accrue." The case most strongly relied upon by appellant is Tingley v. Times-Mirror, 144 Cal. 205, 77 P. 918. But the court was applying a statute which fixed venue (1) where the liability arises, or (2) at the principal place of business of the corporation, or (3) subject to the power of the court to change the place of trial as in other cases. The last named alternative deprives the case of its value as authority, for, as pointed out in O'Malley v. Statesman Printing Co., supra, it is apparent that the court justified its acceptance of venue at the county of plaintiff's residence by this omnibus provision. In the Tingley case [144 Cal. 205, 77 P. 919], the court placed much emphasis upon the fact that the greatest injury was suffered where plaintiff resided, using the following language: "The

liability arises where the injury occurs, and the injury in the case of libel is peculiarly at the county in which the plaintiff resides, if, as is alleged, the defendant has published and circulated the libelous article there; and there it is that plaintiff is most injured by the publication.''

It would seem futile to try to justify venue here by a consideration of the area of greatest disparagement. Certainly, if the occurrence of injury is the criterion, venue would be as extensive as circulation. Nor is any decision helpful which merely holds that a cause of action arises ''where the paper is circulated'' unless it mean one of the two opposites, to wit, wherever the paper is circulated, or where the paper is first circulated. Our statute is concerned not with where the damage occurs but where the cause of action arises or ''accrues.'' It is true that, except in sealed communications, they may be and often are identical, but damage may occur progressively or in fortunate cases be ameliorated, whereas causes of action accrue where the effective cause of the damage occurs. Venue takes no account of either the subsequent mitigation or enlargement of its effect.

We hold therefore that the cause of action accrued, if at all, in the first district of Hinds County. After the elimination of the joint defendant under the plea in abatement, the suit stood alone against a corporation which is domiciled in said county. There being no authority to change the venue of such suit against the corporation to Hinds County (Plummer-Lewis Company v. Francher, 111 Miss. 656, 71 So. 907), it was properly dismissed without prejudice.

Affirmed.

Smith, C. J., delivered a dissenting opinion.

The judgment of the court below should be reversed and the case remanded.

At common law an action for libel would lie in any county in which the libel was published.

Under section 495, Code of 1930, as amended by Laws 1940, c. 248, the venue of a transitory action (in which category an action for libel falls) against a domestic corporation is in the county of the corporation's domicile, or "the county where the cause of action may occur or accrue" at the option of the plaintiff, and if the appellant's cause of action against the Mississippi Publishers Corporation accrued in Sunflower County, the court below erred in dismissing the case.

A cause of action occurs or accrues at the place where it "comes into existence as an enforceable claim." Grenada Bank v. Petty, 174 Miss. 415, 164 So. 316, 318. A cause of action for libel comes into existence, and is complete when, but not until, the defamatory matter complained of is published. A libel has been published when, but not until, it is delivered at the instance of its author or publisher to, and read by or to, one other than the person defamed. "Every publication of a libel is a distinct and separate act and a distinct and separate cause of action. For the defendant always has it in his power to restrict the number of persons to whom he will publish a libel— he may show it or hand it to as many or as few as he pleases; and each time that he chooses to publish it he commits a fresh tort." Odgers, Libel and Slander (5 Ed.), 158.[1]

The authorities agree "that every distinct publication of a libel constitutes a distinct cause of action." But as to what constitutes a distinct publication presents a diversity of views. While there is some authority to the contrary, the majority of the courts that have considered

[1] 3 Rest. Torts, Comment (b) to Sec. 578; Newell "Slander and Libel," 4 Ed., Sec. 198; Gatley, "Libel and Slander," 3 Ed. 412; 33 Am. Jur., "Libel and Slander," Secs. 227, 234; 56 C. J. 1229; Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A. L. R. 908.

this question are in accord with the foregoing views.[2] The several publications of the libel, constituting separate causes of action may be of the first or subsequent editions of a paper, pamphlet or book containing it. I refer to this for the reason that the libel here under consideration appeared in the first edition, and afterwards, on the same day, in the second edition of the appellee's newspaper. If the libel, as claimed by the appellant, was published in Sunflower County this action should not have been dismissed.

The interpretation of this statute involves much more that the mere question of venue, for it affects substantive rights as well, and that evil lurks in the narrow interpretation put on it by affirming associates will appear when we consider:

1. The sales and deliveries of a paper, pamphlet or book containing a libel may continue for a long period of time, and if a cause of action accrues therefor solely on the sale or delivery of the first copy thereof, an action for the libel would be barred by limitation, as my affirming associates say, although the sales and deliveries of the paper, pamphlet or book containing it continued until shortly before, or even after, action on the first sale or delivery is barred.

2. A newspaper, pamphlet or book printed in a foreign state or county may be first published there, and thereafter delivered to and read by persons in Mississippi, as was the case in Ned Lee v. Memphis Publishing Co., 195 Miss. 264, 14 So. (2d) 351, this day decided. In such a case, according to the opinion just rendered, no cause of

[2]Tingley v. Times-Mirror Co., 144 Cal. 205, 77 P. 918; Vicknair v. Daily States Pub. Co., 144 La. 809, 81 So. 324; Id., 153 La. 677, 96 So. 529; Oklahoma Pub. Co. v. Kendall, 96 Okl. 194, 221 P. 762; State ex rel. v. Dist. Court, etc., 129 Okl. 210, 264 P. 154;. Louisville Press Co. v. Tennelly, 105 Ky. 365, 49 S. W. 15; Cincinnati Times Star Co. v. France, 61 S. W. 18, 22 Ky. Law Rep. 1666; Belo & Co. v. Wren, 63 Tex. 686.

action accrues for the publication of the paper, pamphlet or book in Mississippi, but only for its publication in the foreign state or country where it was printed and first published; from which it follows that whether the matter complained of was libelous at all, whether it was privileged, and the damages, if any, to be allowed therefor, would be governed, not by the law of Mississippi, where the injury to the person defamed, in fact, occurred, but by the law of such state or country. Under this interpretation of the statute a resident of Mississippi, whose reputation for all that enters into a life's value may have been ruined by the publication of matter concerning him, first in a foreign state or country, and then in Mississippi, where it would be actionable, but which is either permitted by or privileged under, the law of the foreign country, where it was first published.

3. The person defamed cannot usually ascertain who first received and read the libel, and therefore begins an action therefor at his peril. He may, particularly when the libel appears in a pamphlet or book, know only that it was received and read by A in B county. He institutes an action therefor in B county, based on the publication to A, but at the trial is confronted with evidence, which he cannot then disprove, that the pamphlet or book containing the libel was first delivered to and read by C in D county. To permit the action to fail for that reason reduces the statute to an absurdity.

I am not here concerned with the question of damages flowing from several publications of a libel, or whether all of such damages must be recovered in the same action; for that question does not here arise.

One other observation in this connection is that the evidence does not disclose that this libel was published, within the meaning of the law of libel, in Hinds County, i. e., that a copy of a paper containing it was delivered to and read by or to a person there. All the evidence discloses as to a publication of this libel in Hinds County is that the paper containing it "was first read in Jack-

son." To meet the requirement of publication the evidence should disclose that the paper was delivered to, and read by or to, a person not defamed by it, and who was not responsible for its composition and circulation.

This libel having been published in Sunflower County, this action therefor was properly brought there.

I come now to the appellee, Mrs. Eva Rowe. The evidence discloses that Mrs. Rowe distributed copies of her co-defendant's paper containing this libel without knowing that it appeared therein. Consequently she incurred no liability therefor. Nevertheless, the action against the Mississippi Publishers Corporation should not have been dismissed for that reason. The appellant had the right, under section 495, Code of 1930, to join her as a co-defendant herein, and thereby vest the court below with jurisdiction of the case, although it should develop on the trial that she had incurred no liability for the circulation of this libel, provided she did so in good faith, and not fraudulently, for the purpose of vesting the court below with jurisdiction of the case. Trolio v. Nichols, 160 Miss. 611, 132 So. 750, 133 So. 207. The evidence does disclose that the appellant joined Mrs. Rowe as a co-defendant of the Mississippi Publishers Corporation for the purpose of having the case tried in Sunflower County, as he had the right in good faith to do, but it does not appear therefrom that he knew that when she distributed the paper she did not know of the libel appearing therein. By distributing the paper Mrs. Rowe became prima facie liable for the libel therein, and the burden of disproving which was on her or her co-defendant, and the appellant was under no duty before beginning this action to inquire of her whether she knew of the libel therein when she distributed the papers containing it.

I am requested by my Brother ROBERDS to say that he concurs in this opinion.