M. C. EDWARDS, Plaintiff-Appellant,

v.

The ASSOCIATED PRESS, Defendant-Appellee.

No. 74–2018.

United States Court of Appeals, Fifth Circuit.

April 25, 1975.

Stephen C. Edds, Ralph E. Rood, Columbus, Miss., for plaintiff-appellant.

William J. Threadgill, Columbus, Miss., Walter S. Mack, Jr., Richard N. Winfield, New York City, for defendant-appellee.

Before GOLDBERG and RONEY, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge:

This case raises, once more, the question of the length of Mississippi's long-arm statute. The trial court concluded that the Mississippi courts would not require defendant Associated Press ("AP") to submit to their jurisdiction on the facts presented here. 371 F.Supp. 333 (N.D.Miss.1974). We disagree and hold, furthermore, that the statute as construed does not offend the due process clause of the Fourteenth Amendment. Accordingly, we reverse.

Plaintiff's libel complaint is predicated upon the publication by AP upon its wire services of a false report, characterized by AP as the result of an "inadvertent transposition," that plaintiff's request for a rehearing in a marijuana case had been denied by this Court. The report originated with an AP correspondent in New Orleans, Louisiana, was sent to Atlanta, Georgia, then back to New Orleans. From there it was transmitted into Mississippi, where it was broadcast by an AP member in Lowndes County, Mississippi, where plaintiff resides and where, as duly elected Sheriff, he is in the business of law enforcement and security.

Plaintiff obtained service upon defendant through the provisions of the Mississippi long-arm statute, Miss.Code Ann., § 13–3–57 (1972) [Miss.Code Ann., § 1437 (1972 Cum.Supp.)],[1] which reaches "any foreign . . . corporation . . . who shall make a contract with a resident of this state to be performed in whole or in part by any party in [Mississippi], or who shall commit a tort in whole or in part in [Mississippi] against a resident . . . shall by such act or acts be deemed to be doing business in Mississippi." Plaintiff relies solely upon the commission by defendant of a tort in Mississippi to sustain in personam jurisdiction there. He argues that even if the tort was initiated in New Orleans, the damage to him occurred in Lowndes County, Mississippi, so that the tort was committed "in part" there. This, he contends, satisfies the statute.

Defendant argues, and the district court agreed, that the statutory language does not reach it, since the tort was committed outside Mississippi. It also argues, and the district court agreed, that the Mississippi Supreme Court would not uphold jurisdiction on these facts. Finally, it argues that the

---

1. The statute reads in part:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee.

intersection of First Amendment with due process considerations here prohibits assertion of jurisdiction.

■ We naturally look to state law for the rules of decision in this diversity case.[2] Unfortunately, the *ratio decidendi* we must discern has not yet been precisely articulated by the state court of highest jurisdiction in Mississippi.

Uncertainty about the reach of Mississippi's long-arm statute has continued since its amendment in 1964, whereby the "making a contract" and "committing a tort" jurisdictional bases were added.[3] The confusion stems largely from two cases decided by the Mississippi Supreme Court nearly contemporaneously with the adoption of the statute, Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964) ["Mladinich I"], and Breckenridge v. Time, Inc., 253 Miss. 835, 179 So.2d 781 (1965).

*Mladinich I* was decided after legislative adoption of the amendment to the long-arm statute but a few weeks before the effective date of the amendment. The attempted service had been made before passage of the amendment. The court sustained dismissal by the trial court of an action in slander brought by a resident of Mississippi against a resident of Louisiana for a speech the defendant made in Mississippi. In sustaining the dismissal, the court adopted the "three factor" analysis: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

While this "three factor" analysis has been utilized to define the outer reaches of permissible state power,[4] in *Mladinich I* the Mississippi Supreme Court nevertheless seems to have engrafted an additional, restrictive requirement upon the analysis, namely, the requirement of "doing business" in Mississippi. *See* Smith v. Temco, Inc., 252 So.2d 212, 215 (Miss. 1971). Despite the fact that *Mladinich I* expressly disclaimed any interpretation of the amendments to the long-arm statute, its analysis, including the restrictive "doing business" gloss on the three-factor analysis, was applied in subsequent cases dealing with the amended statute.[5]

In Breckenridge v. Time, Inc., *supra*, 253 Miss. 835, 179 So.2d 781, the court held that jurisdiction of a libel suit against Time, Inc., was unwarranted. The court first assumed that the amended statute applied to the facts before it, but nevertheless held that the corporation had not purposefully done any act in Mississippi and that jurisdiction would offend "traditional notions of fair play and substantial justice." 253 Miss. at 843, 179 So.2d at 784. This rationale, however, was based upon federal constitutional considerations, not upon statutory construction.[6] The Mississippi Supreme Court later characterized *Breckenridge* as a federal, constitutional hold-

---

**2.** Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1933); Walker v. Savell and Associated Press, 335 F.2d 536 (5th Cir. 1964).

**3.** Chapter 320, Miss.Laws 1964, § 1.

**4.** *See, e. g.*, In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972).

**5.** *See, e. g.*, Collins v. Truck Equipment Sales, Inc., 231 So.2d 187 (Miss.1970); Dawkins v. White Products Corp. of Middleville, Mich.,

317 F.Supp. 53 (N.D.Miss.1970), rev'd, 443 F.2d 589 (5th Cir. 1971).

**6.** The decision itself makes this clear since it cites as support for dismissal of jurisdiction three cases based squarely upon federal due process considerations, Buckley v. New York Times Co., 338 F.2d 470 (5th Cir. 1964), Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and Century Brick Corp. v. Carroll, 247 Miss. 514, 153 So.2d 683 (1963).

ing in Mladinich v. Kohn, 186 So.2d 481, 484 (Miss.1966) ["Mladinich II"]:

> In Breckenridge v. Time, Inc., [253 Miss. 835], 179 So.2d 781 (Miss.1965), the Court assumed, but did not decide, that [the amended long-arm statute] applied retroactively. The case went off *on another issue*, namely, that Mississippi courts had no in personam jurisdiction over defendant because it had no minimal contacts in this state. [emphasis supplied].

Further support that *Breckenridge* was not a case of statutory construction may be drawn from Smith v. Temco, Inc., *supra*, 252 So.2d 212, where the court, in discussing the amended statute, notes:

> The statute, as amended in 1964, has not been construed previously by this Court. In Dawkins v. White Products Corporation, 443 F.2d 589, decided by the United States Court of Appeals for the Fifth Circuit on May 20, 1971, the Court of Appeals . . . correctly concluded that this Court had never passed upon the effect of the 1964 amendments.[7]

Even were we to read *Breckenridge* as a case construing the amended long-arm statute, the result would be no different.

In *Breckenridge*, Time, Inc., had no employees or agents in Mississippi, while AP has five news correspondents and a technician who work from office space "loaned" to AP by two of its member papers.[8] More significantly, the Mississippi Supreme Court found that Time, Inc., "did not purposefully do any act or consummate any transaction in this state, . . . ." 253 Miss. at 843, 179 So.2d at 784. Here, however, AP beamed its erroneous report into Mississippi only,[9] for the purpose of disseminating it in the logically relevant market.

Appellee's strong reliance upon *Breckenridge* and upon *Mladinich I*, then, is misplaced. Neither of those cases provides the authoritative construction of Mississippi's amended long-arm statute which *Erie* requires this Court to seek and follow.[10]

The more pertinent authority here is Smith v. Temco, Inc., *supra*, 252 So.2d 212, where the Supreme Court of Mississippi upheld jurisdiction over a nonresident manufacturer in a suit based upon injuries suffered by a purchaser of one of the manufacturer's products. The court, construing the amended statute for the first time as we have seen, holds:

> By the [amendments], there can be no doubt that the intention of the

---

**7.** 252 So.2d at 215. The *Dawkins* court, speaking through Judge Tuttle, characterizes *Breckenridge* both as a "doing business" case in the *Mladinich I* vein and as a federal constitutional decision. 443 F.2d at 593. *Dawkins* refused to follow *Breckenridge* as a guide to the proper construction of the amended statute.

**8.** This information is before us in the form of affidavits submitted by AP in support of its motion to dismiss. Consideration of affidavits and, where necessary, the taking of testimony are appropriate means for resolving jurisdictional disputes. *See* 5 Wright and Miller, Federal Practice and Procedure § 1351, at 565 (1969); *cf.* Gibbs v. Buck, 307 U.S. 66, 71–2, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

**9.** The following colloquy occurred during oral argument by counsel for appellee:

> Q: Tell us how this dispatch reached the State of Mississippi and where else it went.
> A: * * * it [the story] . . . was transmitted via leased line from New Orle-

ans to Atlanta, where there is a computer, retransmitted back to New Orleans and then transmitted within a matter of microseconds into Mississippi. The . . .
> Q: Was it transmitted anywhere else other than Mississippi?
> A: No, your Honor.

**10.** Walker v. Savell and Associated Press, 335 F.2d 537 (5th Cir. 1964), does not require a different conclusion. That case treated only the shortened reach of Mississippi's long arm statute before the 1964 amendments, and this Court held that AP was not "doing business" for jurisdictional purposes under the Mississippi statute. The decision provides no guidance as to whether AP has made a contract or committed a tort in Mississippi, for purposes of the present long-arm statute. The prediction in *Walker*, that the Mississippi courts might restrict the reach of the statute where First Amendment considerations are involved, has received no explicit support in the subsequent decisions by the Mississippi Supreme Court.

Legislature was to broaden the scope of the statute and to enlarge the jurisdiction of the Mississippi courts so as to reach nonresident defendants in two new and distinct categories: (1) The nonresident defendant who shall make a contract with a resident to be fulfilled in the State in whole or in part, and (2) the nonresident defendant who shall commit a tort, in whole or in part, in this State against a resident of the State.[11]

Although *Smith* is a products liability case, there is nothing in it to indicate that this Court should restrict the expansive reading given the amended statute. We are therefore inclined to follow the clear language of the statute.[12] *See* Dawkins v. White Products Corp. of Middleville, Mich., 443 F.2d 589, 594 (5th Cir. 1971).

We must now turn to the question whether the tort was committed "in whole or in part" in Mississippi.[13] Mississippi has adopted the "single publication" rule for purposes of venue in defamation suits. Forman v. Miss. Publishers Corp., 195 Miss. 90, 14 So.2d 344, 148 A.L.R. 469 (1943). Appellee argues that this rule requires a finding that the tort alleged here was complete in New Orleans where AP first published the report. It would follow that the tort occurred neither wholly nor partially in Mississippi, so that the terms of the long-arm statute would not apply to this tort. We disagree.

*Forman* treats the question of proper venue in a libel action against a foreign corporation qualified to do business in Mississippi and domiciled in Hinds County, Mississippi. The defendant published and first circulated the allegedly libelous article in Hinds County, but the plaintiff filed suit in Sunflower County, where he resided and where the paper was later circulated. *Forman* holds that, under the applicable statute, which required venue in the county "where the cause of action may occur or accrue," the proper venue for libel by the publication of a newspaper is in the county where the paper is first published or circulated. The court reasons that this "single publication" rule would prevent a new cause of action arising with each new reader. Moreover, the court concludes that, since the gravamen of the offense is not the knowledge of the plaintiff or the injury to his feelings but is rather the damage to his reputation, the right accrues as soon as the article is exhibited to third persons; under this analysis, further publication increases the potential injury, but does not spawn new causes of action.

Whether the Mississippi Supreme Court would incorporate the venue rule of *Forman* into its amended long-arm statute is doubtful.[14] In *Breckenridge, supra,* 253 Miss. at 842, 179 So.2d at 783, the court specifically holds the question open:[15]

---

11. *Id.*, 252 So.2d at 215.

12. Additional support for applying the statute to AP may be drawn from *Mladinich II,* where the Mississippi Supreme Court determined that the amendments to the long-arm statute were not to be applied retrospectively. The case involved a slander by the nonresident defendant during a speech he gave as a guest speaker to a convention in Harrison County, Mississippi. The speech was his sole contact with the state. Nevertheless, the court notes by way of *dictum*:

> Since it is not necessary to this decision, we assume without deciding that, if Kohn had committed the alleged slander in this state after the effective date of [the amended statute], it would suffice to give a Mississippi court in personam jurisdiction over him. 186 So.2d at 482.

13. This question was pretermitted by the court below, since it found that the statute was inapplicable, on the authority of *Breckenridge, supra.*

14. It should not be overlooked that *Forman* deals with a state statute fixing venue in a single county within a state, while a tort with multistate elements may present more than one appropriate forum for redress. Furthermore, *Forman* was concerned only "with the centripetal forces which fix venue at [the injury's] axis or center of origin," 195 Miss. at 105, 14 So.2d at 347, 148 A.L.R. at 472, not with whether the suit could be entertained at all by the courts of Mississippi.

15. In Dawkins v. White Products Corp. of Middleville, Mich., 443 F.2d 589 (5th Cir. 1971), this Court notes:

> In *Breckenridge* the tort of defamation alleged against Time, Inc., would, under the

[W]hether we should apply the more limited venue rule of the single publication doctrine, stated in *Forman v. Mississippi Publishers Corporation*, 195 Miss. 90, 14 So.2d 344, 148 A.L.R. 469 (1943), to multistate defamation is a complex issue not appropriate to be decided here, . . . .

■ We are inclined to think that the Mississippi Supreme Court, regardless of how it would decide the venue question in a suit such as this,[16] would not incorporate the single publication rule into its amended jurisdictional statute. *Forman* makes it clear that the cause of action in defamation is "enlarged by an expanding circulation" of the defamatory matter. 195 Miss. at 105, 14 So.2d at 346, 148 A.L.R. at 472. Since the long-arm statute embraces torts committed in whole *or in part* in Mississippi, its plain language encompasses at least that part of the enlarged tort created by the distribution of the allegedly defamatory matter in Mississippi.[17]

■■ Our unwillingness to cramp the statutory language is buttressed by the Mississippi Supreme Court's decision in Smith v. Temco, Inc., *supra,* 252 So.2d 212, upon which we again place strong reliance:

> Mississippi decision of Forman v. Mississippi Publishers Corporation, 195 Miss. 90, 14 So.2d 344, have occurred where Life Magazine was published. 443 F.2d at 593.

This statement is *dictum,* since the basis of distinction relied upon in *Dawkins* was that the Mississippi court in *Breckenridge* either had applied a restrictive "doing business" analysis or had found that jurisdiction over Time, Inc., would not pass due process scrutiny. See note 7, *supra.*

**16.** Even if the single publication rule be applied to a multi-state defamation, it is not yet settled in Mississippi whether the actionable publication must be made to persons outside the corporate entity initiating the defamatory matter. *Cf.* An Examination of Publication and Choice of Law Problems in Multi-State Libel, 56 N.W.L.Rev. 823, 825 n. 21 (1962); *see also* Prosser, Law of Torts § 113 (4th ed. 1971). Under such a rule, the publication in the case before us would not have occurred (a) until the erroneous story was received by AP's members, or (b) until one of its members actually broadcast the story to persons

In 86 C.J.S. Torts § 21, p. 937 (1954), it is stated:

> Damage resulting from a breach of a duty and invasion of a right is a necessary element of a tort.

> In addition to the elements of tort heretofore discussed, a third element requisite thereto is damage resulting from the breach of duty and invasion of right.

> The tort is not complete until the injury occurs, and if the injury occurs in this State, then, under the amended statute, the tort is committed, at least in part, in this State, and personam [*sic*] jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court. 252 So.2d at 216.

While in *Smith* the entire injury accrued in Mississippi, although the allegedly defective machine was manufactured elsewhere, we nevertheless feel that *Smith* indicates an intention by the Mississippi Supreme Court to read broadly the "in part" language of Mississippi's long-arm statute.[18]

Indeed it would be anomalous to hedge in the sweeping statutory language of § 13–3–57 with the restrictions of the single publication rule,[19] as appellee

unconnected with AP. *Cf.* Casano v. WDSU–TV, Inc., 313 F.Supp. 1130 (S.D.Miss.1970). Because of the disposition we make of this case, we do not pass upon these intricate questions.

**17.** This is true even if AP is found liable only for that portion of damage, if any, attributable to the transfer of the erroneous report from AP to its members in Mississippi and not for any subsequent damage.

**18.** *Compare* Margoles v. Johns, 157 U.S.App. D.C. 209, 483 F.2d 1212 (1973) (construing the narrower District of Columbia long-arm statute).

**19.** The goal of the single publication rule as to venue is to protect the defendant from a multiplicity of suits, from a continuous tolling of the statute of limitations, and from the application of diverse laws to a single event. *See* Prosser, Law of Torts § 113 (4th ed. 1971). Rather than accomplish these necessary goals through the jurisdictional statutes, however, they may be more logically effectuated through requiring the plaintiff to collect

would have us do and as was done in Insull v. New York World-Telegraph Corp., 172 F.Supp. 615, 632–4 (N.D.Ill.), aff'd, 273 F.2d 166 (7th Cir. 1959), cert. denied, 362 U.S. 942, 80 S.Ct. 807, 4 L.Ed.2d 770 (1960).

Unlike the posture of the case before us, the Seventh Circuit rendered the *Insull* decision without the benefit of a prior authoritative construction of the Illinois long-arm statute. That statute has since been broadly construed in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).[20] The sharp conflict between *Insull* and *Gray* has been noted,[21] and the Second Circuit[22] and an Illinois District Court[23] have refused to follow this aspect of *Insull*. In the absence of any contrary indication from the Mississippi Courts, and instructed by the broad scope of the language of Smith v. Temco, *supra,* 252 So.2d 212, we are likewise unpersuaded by the *Insull* reasoning with respect to the single publication rule and decline to engraft a restrictive construction upon the Mississippi long-arm statute.[24]

■■ We therefore conclude that the Mississippi long-arm statute by its terms confers jurisdiction over AP upon the district court below.[25]

Resolution of this issue does not, however, settle the question before us. Appellee contends that applying the Mississippi long-arm statute to confer jurisdiction over it will contravene federal constitutional requirements of due process, and the district court so held.[26] Again, we disagree.

While the scope of a state's power to call foreign entities before its courts has broadened considerably in the past three decades, there are nevertheless constitutional limits to a state's power. In 1945, the Supreme Court traced the general outlines of the due process determination in jurisdictional disputes:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154,

all his damages in a single action, measuring the running of the statute of limitations from the initial publication, see, e. g., Forman, supra, 195 Miss. at 107, 14 So.2d at 347, 148 A.L.R. at 473, and choosing the law of a single jurisdiction to govern substantive issues. *See* Restatement (2d), Conflict of Laws § 150 (1971); Curtis Publishing Co. v. Golino, 383 F.2d 586, 594 n. 19 (5th Cir. 1967); Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir. 1966).

**20.** *Gray* was cited by the Mississippi Supreme Court with approval in Smith v. Temco, Inc., 252 So.2d at 216.

**21.** *See, e. g.,* Curtis Publishing Co. v. Birdsong, 360 F.2d 344, 348 (5th Cir. 1966) (Rives, J., concurring).

**22.** Buckley v. New York Post Corp., 373 F.2d 175, 180, 20 A.L.R.3d 942, 950 (2d Cir. 1967).

**23.** Novel v. Garrison, 294 F.Supp. 825, 830–2 (N.D.Ill.1969); Process Church of Final Judgment v. Sanders, 338 F.Supp. 1396, 1398–1401 (N.D.Ill.1971).

**24.** This Court, of course, has followed *Insull's* reasoning insofar as the "doing business" jurisdictional base is concerned. Buckley v.

New York Times Co., 338 F.2d 470, 474 (5th Cir. 1964).

**25.** In reaching this conclusion, we are not unmindful of our duty to construe statutes narrowly to avoid constitutional problems. *See, e. g.,* Benjamin v. Western Boat Building Corp., 472 F.2d 723, 725, reh. denied, 474 F.2d 1347, 1348 (5th Cir.), cert. denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); New York Times Co. v. Connor, 291 F.2d 492, 496 (1961), vacated, 310 F.2d 133 (5th Cir. 1962). This duty, however, cannot bind us to ignore clear trends in a state's application of its own law. *Cf.* Dawkins v. White Products Corp. of Middleville, Mich., 443 F.2d 589 (5th Cir. 1971); Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir. 1969).

**26.** The district court assumed *arguendo* that the statute applied and then held, in the alternative:

> The Court concludes that to permit the maintenance of this action against defendant would offend "traditional notions of fair play and substantial justice." This is especially true in light of the freedoms which are protected by the First Amendment. 371 F.Supp. at 338.

158, 90 L.Ed. 95 (1945) [citations omitted].

Twice since rendering its seminal opinion, the Supreme Court has made a significant effort to add content to the flexible standards of *International Shoe.* In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court declared that due process did not prohibit California's entertaining a suit against a nonresident based upon the issuance of a single insurance contract in the forum and the receipt of premium payments mailed from the forum. A year later, Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), suggested that due process would not be satisfied unless the defendant had "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."

■ Analysis of our own cases reveals that we have woven, in regard to entities clothed with First Amendment protections,[27] a tighter due process net around state power than is true with regard to other entities. Our initial stitch was inserted in Walker v. Savell and the Associated Press, 335 F.2d 536, 544 (5th Cir. 1964), but it was New York Times Co. v. Connor, 365 F.2d 567 (5th Cir. 1966), which completed the pattern.

In *Connor,* the Court was confronted with the specter of "newspapers with even one copy circulating within a state [being] subjected to libel actions and the risk of large judgments at the hands of local juries incensed by the out-of-state newspaper's coverage of local events." *Id.,* at 572. In order to afford some degree of protection to publishers against such an abuse of state power,[28] *Connor* holds that "First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity." *Id.*[29]

Appellee here insists that the "rule" of *Connor* requires the quashing of the service obtained on it. Confronted with an analogous contention, Judge Learned Hand wisely commented that "[i]t is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass. . . . One may look from one end of the decisions to the other and find no *vade mecum.*" Hutchinson v. Chase & Gilbert, 45 F.2d 139, 142 (2d C.C.A.1930); *accord,* Dooly v. Payne, 326 F.2d 941, 943 (5th Cir. 1964).

His reminder is apt for the case before us. *Connor* indicates not so much a rule as it expresses a cautionary note. When a court attempts to assess whether jurisdiction over a defendant is reasonable, First Amendment considerations are a significant factor to be weighed. As Judge Thornberry stated for the Court

27. AP is protected by the First Amendment to the same extent as is a newspaper. *Cf.* Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Associated Press v. United States, 326 U.S. 1, 20, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); Associated Press v. National Labor Relations Board, 301 U.S. 103, 132, 57 S.Ct. 650, 81 L.Ed. 953 (1937).

28. *Connor* was decided by a divided court. However, the dissenter there, the writer of the present opinion, agreed that publishers required more protection than that afforded by the "minimal contacts" analysis alone. 365 F.2d at 582.

29. This decision has not been greeted with enthusiasm. Buckley v. New York Post Corp., 373 F.2d 175, 182–4 (2d Cir. 1967); McFaddin v. National Executive Search, Inc., 354 F.Supp. 1166, 1171 n. 3 (D.Conn.1973); Johnston v. Time, Inc., 321 F.Supp. 837, 846 (M.D.N.C.1970), modified on other grounds, 448 F.2d 378 (4th Cir. 1971); Origoni v. Bulletin Co., 258 F.Supp. 359, 361 (D.D.C.1966) (by implication), rev'd on other grounds, 128 U.S. App.D.C. 282, 387 F.2d 240, cert. denied, 389 U.S. 928, 88 S.Ct. 287, 19 L.Ed.2d 278 (1967); Comment, Long-Arm Jurisdiction Over Publishers: To Chill a Mocking Word, 67 Colum. L.Rev. 342, 355–64 (1967); Note, 52 Iowa L.Rev. 1034, 1041 (1967).

The Supreme Court was invited to decide, but did not reach, the issue in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), because of an adequate state ground for asserting jurisdiction. *Id.,* at 264 n. 4, 84 S.Ct. 710.

in Curtis Publishing Co. v. Golino, 383 F.2d 586, 592 (5th Cir. 1967):[30]

> Certainly the language in *Connor* does not stand for the proposition that, because of the constitutional protection of the dissemination of ideas, a publisher may never be sued for a libel in a state other than that of publication. Rather, *Connor* indicates that first amendment considerations are a factor relevant to a determination of the jurisdictional question; and, the discussion of that factor in *Connor* must be viewed in its factual context.

■ Our cases, then, generally require that the defendant engage in sufficient local activity, or cause a consequence, in the forum state sufficient "to indicate a purposeful enjoyment of the benefits and protection of that state's law," Benjamin v. Western Boat Building Corp., 472 F.2d 723, reh. denied, 474 F.2d 1347, 1348 (5th Cir.), cert. denied, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973); Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir. 1969), the cause of action sued upon usually must stem from the defendant's activities in the local forum, Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir. 1966), Turner v. Jack Tar Grand Bahama, Ltd., 353 F.2d 954 (5th Cir. 1965), and the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant comport with elemental notions of fairness, Curtis Publishing Co. v. Golino, *supra*, 383 F.2d 586; Buckley v. New York Times Co., 338 F.2d 470 (5th Cir. 1964). It is in the third assessment that First Amendment considerations have played a part.

■ AP's activities in Mississippi indicate that AP has engaged in sufficient local activity to justify, under the due process clause, Mississippi's exercise of its jurisdiction. AP maintains five news correspondents in Mississippi as well as a maintenance employee.[31] Moreover, these employees occupy an office in the state, although the office is offered without rent by two AP members and it is not designated as an AP office in the building directory.[32] More significantly, the news report upon which plaintiff's libel action is predicated was aimed exclusively at Mississippi.[33] In our prior cases, the publications were addressed either to a primary market, distant from the locale in which the greatest injury was alleged,[34] or to a national market.[35] Here, however, defendant's transmission was purposefully and specifically aimed at Mississippi,[36] as surely as if the proverbial gunman had stood in Alabama and fired into a crowd in Mississippi.[37]

Having established that the defendant's activities reveal a purposeful con-

---

**30.** Judge Thornberry was also the organ of the Court in *Connor*.

**31.** Contrast with this fact the "stringers" and temporarily-assigned employees which were held to be insufficient contacts in Buckley v. New York Times Co., 338 F.2d 470 (5th Cir. 1964), and in New York Times Co. v. Connor, 365 F.2d 567 (5th Cir. 1966).

**32.** Eleven of AP's 1260 newspapers located in the United States, or approximately 1%, are located in Mississippi. This is not so trivial a representation as in *Buckley, supra*, or *Connor, supra*. Moreover, the facts before us do not disclose whether any other media representatives in Mississippi are AP subscribers.

**33.** See note 9, *supra*.

**34.** Buckley v. New York Times Co., *supra*; New York Times Co. v. Connor, *supra*; Wolfson v. Houston Post Co., 441 F.2d 735 (5th Cir. 1971) (per curiam).

**35.** Curtis Publishing Co. v. Golino, *supra*, 383 F.2d 586.

**36.** It may appear odd that we should hold AP in part because it did not choose to give this story nationwide coverage. Our inquiry here, however, is whether AP became involved with the state through actions freely and intentionally done. Surely, one gauge of that intention—and thus of AP's expectations about where it might be called to defend a suit—is the specificity with which a given story is broadcast.

**37.** As we remarked in n. 17, *supra*, AP may ultimately be held liable for only a small portion of the damages, even if liability be established. Nevertheless, AP's function is to place the news at its members' disposal. Thus, AP's transmitting the report only to Mississippi is significant, regardless of who may be responsible for further transmission. We, of course, intimate no opinion as to the latter issue.

nection with Mississippi, we need not delay long over the requirement that the cause of action stem from the defendant's activities in Mississippi.[38] While the activities of the six employees may have had little direct relation to the averred libel, the communication at issue grew out of the defendant's purposeful transmission of the message into Mississippi.[39]

We also conclude that it is reasonable to exercise jurisdiction over AP on these facts. Mississippi has a strong interest in allowing its resident to vindicate his claim in its courts. *See* von Mehren and Trautman, The Law of Multistate Problems 599–601 (1965); *cf.* Curtis Publishing Co. v. Birdsong, *supra*, 360 F.2d at 346–7. Moreover, given the number of permanent employees in Mississippi, its members there, and the continuous stream of transmissions into and out of the state, AP can claim no sense of surprise, of expectations disappointed, in being called into Mississippi's courts. In another and more appropriate case, such expectations might form a legitimate source of unfairness to a nonresident of the forum state.

▮ That AP is a non-profit association does not, under the circumstances here, warrant a finding of unreasonableness. It is an instrumentality established by its constituent members who are engaged in a commercial business for profit.[40]

First Amendment considerations, while important, do not change the course we have charted. We have already demonstrated that AP's contacts with Mississippi in this case are much more significant than those of the New York *Times* with Louisiana, in Buckley v. New York Times, *supra*, 338 F.2d 470, and with Alabama, in New York Times v. Connor, *supra*, 365 F.2d 567. Of primary importance, however, we are of the opinion that whatever burden defense of this suit may place upon AP's exercise of its First Amendment rights, that burden is justified by AP's many contacts with Mississippi,[41] particularly its deliberate choice of the Mississippi market as the place for distributing the controverted message.

In conclusion, we reaffirm the First Amendment protections we have woven into our prior *in personam* jurisdictional analysis, but we find, upon consideration of the factors involved here, that the fabric of that analysis is neither torn nor stretched by assertion of jurisdiction over AP. Having put on the mantle of Mississippi's benefits and privileges, AP may not in good conscience complain of the needle of litigation.

Reversed and remanded.

---

**38.** While this requirement has a constitutional dimension, Curtis Publishing Co. v. Birdsong, *supra*, 360 F.2d 344, it is also a requirement under the Mississippi long-arm statute. See note 1, *supra*.

**39.** Had the only contact of defendant with Mississippi been its employees and office space, the averred libel occurring for example only in New York, this would be a difficult case. *See Birdsong, supra*, n. 38.

**40.** *Cf.* New York Times Co. v. Connor, *supra*, 365 F.2d at 570; Associated Press v. National Labor Relations Board, 301 U.S. 103, 128, 57

S.Ct. 650, 81 L.Ed. 953 (1937). AP's assertion that it "is not organized to produce financial profit, gain or benefit for its members," simply defies logic. For what purpose do its members exchange news and photographs if not to enhance their various products, and hence their profits?

**41.** Indeed, First Amendment considerations are mitigated in this case, since AP is able, according to its affidavits, to apportion the costs of defending suits such as this among a number of its subscribers. Thus, the hazard of encountering lawsuits upon entry into a particular news market is diluted.