**COX ENTERPRISES, INC., d/b/a The Atlanta Journal, and Darrell Simmons, Defendants-Appellants,**

v.

**Darwin HOLT, Plaintiff-Appellee.**

No. 81–7130.

United States Court of Appeals, Eleventh Circuit.

June 14, 1982.

Bradley, Arant, Rose & White, John H. Morron, Birmingham, Ala., Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr., Gary R. Cunningham, Atlanta, Ga., for defendants-appellants.

Robert J. Hayes, Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, MERRITT * and HENDERSON, Circuit Judges.

MERRITT, Circuit Judge:

This diversity action for libel and invasion of privacy arises out of a series of newspaper articles published on the sports page of *The Atlanta Journal* in 1979. The initial issue is jurisdictional: whether on the facts the publisher defendant, Cox Enterprises, Inc., a Georgia corporation, or its reporter, Darrell Simmons, is amenable to service of process in a federal district court in Alabama under the law of this Circuit. We hold that the District Court did not have jurisdiction under applicable law previously developed in the former Fifth Circuit.

The five articles sued upon discuss the first meeting of the University of Alabama and Georgia Tech football teams since 1961, in the context of an incident which contributed to the 18-year standoff. The controversial incident of the 1961 Alabama-Georgia Tech game was a block thrown by Alabama player Darwin Holt on a fair catch play. Darrell Simmons, a sports reporter for the defendant, wrote the articles during the weeks before the game in 1979, drawing from his own memory, old newspaper clippings, interviews in Georgia and an interview of Holt printed shortly before in *The Tuscaloosa News* and received by Simmons over teletype. Simmons lives in Atlanta and never traveled to Alabama in pursuit of the Holt story. Although his articles presented both sides of the controversy, the block by Holt was described at various points as "an old Alabama greeting. Pow! right in the kisser," "bestial," and having been undertaken "savagely and unexplainably."

After discovery was completed, the defendant moved for dismissal under Rule 12 for lack of jurisdiction and alternatively for summary judgment. District Judge Lynne held that there were sufficient contacts between the defendant and the state of Alabama for the exercise of jurisdiction. He granted summary judgment on the invasion of privacy count but denied it on the libel count. He certified the case for interlocutory appeal under 28 U.S.C. § 1292(b). The defendant challenges the finding of in personam jurisdiction and the denial of summary judgment on the libel count. Because we find that the defendant had insufficient contacts in Alabama for federal jurisdiction to attach, we address only that issue and reverse with instructions to dismiss.

■ The former Fifth Circuit followed the principle in diversity cases for libel that the reach of federal jurisdiction over an out-of-state publisher is defined in part by federal standards rather than entirely by state standards governing long-arm jurisdiction and service of process. In this Circuit, as in the former Fifth Circuit, federal jurisdiction is subject to First Amendment considerations when a nonresident publisher is sued for libel. In *New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir. 1966) the former Fifth Circuit held that there were not sufficient contacts between *The New York Times* and Alabama for a federal court to acquire jurisdiction after service of process on a foreign corporation under the Alabama long-arm statutes. *Connor* held that "First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity." *Id.* at 572. The theory is that a

---

* Honorable Gilbert S. Merritt, U. S. Circuit Judge for the Sixth Circuit, sitting by designation.

broad or sweeping view of jurisdiction—an expansion of jurisdiction to the limits permitted by due process in other types of cases—would tend to have a "chilling" effect on the press because publishers would hesitate to distribute their newspapers in any areas other than those of their major circulation. For discussion of the law of other circuits on this issue of federal jurisdiction, see *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2nd Cir. 1963); 6 A.L. R.3d 1072 (1966); 4 Wright & Miller § 1075 (1969).

The contacts in *Connor* did *not* amount to the minimum required for personal jurisdiction in a federal court in Alabama: (1) *The New York Times* did not have an office, employees, or agents in Alabama; (2) newspapers were sent directly to subscribers in Alabama from New York and all orders taken in New York; (3) staff correspondents had visited Alabama on seven occasions during a 17-month period; (4) during that same period, Alabama stringers were paid a total of $415 and employees had visited Alabama five times to solicit advertising; (5) Alabama advertising constituted between .025 to .046% of total advertising revenue; and (6) the average daily circulation of 395 *Times* in Alabama and Sunday circulation of 2,455 accounted for about .23% of the total sales revenue.

The issue has been considered by the former Fifth Circuit on at least four occasions since *Connor*. In *Curtis Publishing Company v. Golino*, 383 F.2d 586 (5th Cir. 1967), the Court noted that the considerations described in *Connor* did not preclude jurisdiction over the publishers of *The Saturday Evening Post*, because a national magazine's primary function, unlike a local newspaper's, is to encourage nationwide subscriptions. Occasional suits would not "chill the desire of Curtis to actively encourage the widest possible circulation ...." 383 F.2d at 592. In *Wolfson v. Houston Post Company*, 441 F.2d 735 (5th Cir. 1971) (per curiam), jurisdiction over *The Houston Post* through the Florida long-arm statute was denied on facts nearly identical to those in *Connor*. In *Edwards v. Associated Press*, 512 F.2d 258 (5th Cir. 1975), the Court emphasized that a state may exercise long-arm jurisdiction over an out-of-state publisher who *purposefully* directs a story toward readers in the state in an effort to exploit the local market, provided the exercise of jurisdiction does not offend basic notions of fairness. Associated Press employed five correspondents in Mississippi and transmitted the allegedly libelous story *only* to Mississippi subscribing newspapers. Such actions were found to be "purposefully and specifically aimed at Mississippi, as surely as if the proverbial gunman had stood in Alabama and fired into a crowd in Mississippi." 512 F.2d at 267.

Three months after *Edwards*, the former Fifth Circuit affirmed the assertion of personal jurisdiction over the Washington Post Company under the Florida long-arm statute in *Rebozo v. Washington Post Co.*, 515 F.2d 1208 (5th Cir. 1975). There, the Court held that a publisher's intent to exploit a state market could be inferred from the following types of purposeful activities in the forum undertaken for profit: substantial advertising revenues gleaned from Florida; significant amounts of time spent by *Post* reporters, including the author of the challenged article, in Florida; and the transmission of the story on a *Post* wire service subscribed to by ten Florida newspapers.

The plaintiff here would have this court extend the *Washington Post* case further to include any incidental activity in the forum state which would lead to some pecuniary benefit. Such a ruling would require us to overrule the principles set forth in *Connor* and followed in subsequent cases. We decline to do so.

■ The factual details of this case are very similar to those in the *Connor* and *Houston Post* cases. According to the undisputed findings of fact,

1. Cox publishes *The Atlanta Journal, The Atlanta Constitution, The Weekend* (a combined Saturday newspaper) and *The Atlanta Journal-Constitution* (a combined Sunday newspaper)—collectively referred to as *Atlanta Newspapers*.

2. Approximately 80 to 85% of *Atlanta Newspapers* are circulated in a 28-county area surrounding Atlanta.

3. An unknown number of vending boxes, owned by *Atlanta Newspapers*, are located in Alabama.

4. *Atlanta Newspapers* employs no stringers in Alabama, and reporters only occasionally venture into that state to gather news stories.

5. Simmons did not go to Alabama to prepare the allegedly libelous articles, though he did use comments from an interview of Holt published in *The Tuscaloosa News*.

District Judge Lynne held that "[b]ut for the facts found in paragraphs 7 and 9, supra," jurisdiction would have been denied. Paragraphs 7 and 9 state that:

7. *Atlanta Newspapers* leases a room in a building in Lanett, Alabama, for $30.00 per month. The leased room is used as a drop point for newspapers. The papers are delivered to the drop point by a common carrier and are picked up by the independent distributors. *Atlanta Newspapers* owns a number of vending machines which are located in Alabama for the purpose of selling *Atlanta Newspapers*. The vending machines are leased to the independent distributors at the rate of $0.25 per week and are operated by the independent distributors.

. . . . .

9. The plaintiff complains of 5 articles which appeared in the sports pages of the *Journal* during the period of Sunday, September 2, 1979, to Friday, September 7, 1979. At least one edition of the Sunday paper containing the article complained of was circulated outside the State of Georgia and into the State of Alabama.

(Joint Appendix, pp. 2–3, Opinion.)

The result of paragraph 9 is one that *Connor* explicitly sought to avoid:

If this Court were to apply *Elkhart [Engineering Corp. v. Dornier Werke*, 5th Cir., 343 F.2d 861] literally to the commission of the tort of libel, newspapers with even one copy circulating within a state would conceivably be subjected to libel actions and the risk of large judgments at the hands of local juries incensed by the out-of-state newspaper's coverage of local events.

*Connor, supra* at 572. Nor do the leasing of an unfurnished room as a drop point for independent distributors and an undetermined number of coin vending machines establish jurisdiction. Such activities do not indicate a national market as in *Curtis Publishing* or the sale of advertising, as in *Washington Post*.

The limited distribution of newspapers through vending machines in this case is similar to the limited distribution of the *New York Times* found insufficient in *Connor*. In both cases the distribution is incidental and not a part of the paper's primary circulation area. In both cases there is no evidence of an effort to exploit or penetrate the state market beyond making the paper available to a few readers in the state who have an interest in it. The purpose of the standard enunciated in *Connor* is to encourage the flow of information across state lines and not to deter relatively minor press activities within a state. The minimal contacts of the *Atlanta Journal* in this case are protected by this principle.

Viewing separately the cause of action against the reporter, Darrell Simmons, we do not find that the contacts rise to a level sufficient for jurisdiction. Simmons lives in Atlanta. He did not travel to Alabama to research or write the challenged stories. The *Tuscaloosa News* interview from which he gleaned some information was transmitted to Atlanta by teletype. In sum there was no purposeful activity in the forum state by Simmons.

Accordingly, the judgment of the lower court is reversed and the case remanded with instructions to dismiss for want of personal jurisdiction.