**ARMY TIMES PUBLISHING COMPANY, Defendant-Appellant,**

v.

**Robert E. WATTS, et al., Plaintiffs-Appellees.**

No. 83–7220.

United States Court of Appeals, Eleventh Circuit.

April 26, 1984.

Michael S. Horne, Covington & Burling, Washington, D.C., M. Roland Nachman, Jr., Montgomery, Ala., for defendant-appellant.

Albert W. Copeland, Copeland, Franco, Screws & Gill, Dexter C. Hobbs, Thomas T. Gallion, III, Will Gunter, Gallion, Gallion & Gunter, Montgomery, Ala., for plaintiffs-appellees.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

The plaintiffs, Robert E. Watts, Gregory Pritchett, and Continental Hotel Group, Inc., brought suit against defendant Army Times Publishing Company (ATPC) alleging that they were libeled by an article published in the defendant's publication, *Federal Times.* Entitled "The Best Little Whorehouse?", the article concerned a congressional inquiry into a loan guarantee of almost one million dollars made by the FHA to refurbish a motel owned by the Continental Hotel Group, an Alabama corporation. Plaintiffs Watts and Pritchett are both officers of the corporation.

The defendant moved to dismiss the action on the basis that no personal jurisdiction existed in Alabama. After a hearing, the district court denied the motion, finding sufficient contacts for personal jurisdiction. The district court, however, granted the plaintiffs' motion to certify its order pursuant to 28 U.S.C. § 1292(b) for interlocutory appeal because the jurisdictional issue was a controlling question of law "as to which

there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This court agreed to hear the appeal.

## I. Jurisdictional Facts

The relevant jurisdictional facts as found by the district court are undisputed by the parties. The court found:

1. During all times relevant, the *Federal Times* was a weekly newspaper based in Washington, D.C. and designed to appeal principally to federal civilian employees.

2. On November 24, 1980, and again on May 25, 1981, Alabama accounted for approximately 2.1% of the *Federal Times'* total circulation, with between 914 and 928 of the newspaper's issues circulated in the state on each of said dates; and California accounted for the largest percentage of the newspaper's total circulation, with between 11.6 and 11.9% of the newspaper's total circulation on each of said dates, followed by Washington, D.C. and the surrounding area, with between 11.6 and 11.8% of the newspaper's total circulation on each of said dates.

3. Almost all of the *Federal Times'* circulation in Alabama was by mail subscription.

4. The *Federal Times'* derived $1,591.20 in classified advertising from Alabama, an amount representing less than ½ of 1% of the newspaper's total advertising revenue.

5. All the information used in the allegedly libelous article was gathered from sources in Washington, D.C.

6. At the year-end 1980 and 1981, the *Federal Times* had twelve full-time and part-time regular employees, all located in Washington, D.C., and had several "stringers" located throughout the country but not in Alabama.

7. ATPC is incorporated in Delaware and has its principal place of business in Washington, D.C.

8. In addition to the *Federal Times*, ATPC publishes three other weekly newspapers, the *Army Times*, the *Navy Times*, and the *Air Force Times*, all directed to military personnel, and it publishes two monthly newspapers, the *Times Magazine*, which is distributed with the three military newspapers, and the *Military Market*, which is distributed free of charge to exchange and commissary managers.

9. On November 24, 1980, and December 21, 1981, the "total number of subscribers in Alabama" for all of ATPC's publications ranged from a circulation of 7,053 to 7,417, and the "total paid circulation in Alabama" for all of ATPC's publications ranged from a circulation of 7,988 to 8,307.

10. ATPC had three Alabama distributing agents who were paid a commission for each publication issue sold by them through military exchange newsstands and vending machines.

11. ATPC derived $219,200.00 in 1980 and $245,900.00 in 1981 from the sale of all its publications in Alabama; and for 1980 approximately $6/10$ of 1% and for 1981 approximately $7/10$ of 1% of the company's total advertising revenues came from classified advertising purchased by persons residing or stationed in Alabama.

12. ATPC owned and operated the Army Times Marketing Service, which solicited renewal subscriptions in Alabama and throughout the rest of the country for all of the company's publications as well as those of other publishers and solicited renewals of several credit cards. ATPC estimates that for 1980, and again for 1981, the Marketing Service made approximately 3,500 renewal solicitation telephone calls on behalf of all the service's clients to persons in Alabama, with approximately 395 of these calls being on behalf of *Federal Times*.

From this evidence, the court concluded that "a picture emerges of [ATPC] as a nationwide publishing operation designed, through its weekly newspapers and monthly magazines and its national marketing service, to penetrate and exploit the various pockets of federal civilian and military

personnel scattered throughout the country." It also found that Alabama was "a significant market, if not one of several principal markets, for the newspaper."

## II. The Sufficiency of ATPC's Contacts

Based on its factual findings, the district court concluded that adequate contacts existed between the defendant and Alabama to make it fair and reasonable to require ATPC to defend in that state. It found that although the actual circulation figures for *Federal Times* in Alabama of between 914 and 928 a month were not quantitatively great, the "quality and nature" of the defendant's activities in the state were such that it justified a finding of personal jurisdiction. In making its determination, the district court relied on this circuit's law that where first amendment considerations are present the plaintiff must make "a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity." *Cox Enterprises, Inc. v. Holt,* 678 F.2d 936, 937 (11th Cir.1982), *quoting New York Times Company v. Connor,* 365 F.2d 567, 572 (5th Cir.1966).

Subsequent to the district court's ruling, the United States Supreme Court decided the cases of *Keeton v. Hustler Magazine,* —— U.S. ——, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *Calder v. Jones,* —— U.S. ——, 104 SCt. 1482, 79 L.Ed.2d 804 (1984). The Court in *Keeton* and *Calder* "reject[ed] categorically" the notion that first amendment considerations entered into a determination of whether personal jurisdiction existed, *Keeton,* —— U.S. at —— n. 11, 104 S.Ct. at 1481 n. 11; *Calder,* —— U.S. at ——, 104 S.Ct. at 1487, and made clear that the personal jurisdiction inquiry in a libel case is the same as that used in all cases, focusing on "the relationship between the defendant, the forum, and the litigation." *Keeton,* —— U.S. at ——, 104 S.Ct. at 1478, *quoting Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). This circuit's requirement of greater contacts for a finding of personal jurisdiction in first amendment cases is thus no longer valid law after *Keeton* and *Calder.*

The district court in finding that personal jurisdiction existed applied the "greater contacts" standard of *Cox,* a more stringent standard than is now required after *Keeton* and *Calder.* Although the jurisdictional facts here may have presented a close question under the "greater contacts" standard,[1] we conclude that once the "minimum contacts" test is applied, the district court was clearly correct in finding personal jurisdiction. A review of ATPC's contacts with Alabama shows that the relevant factors outlined in *Keeton* and *Calder* for exercising personal jurisdiction were present.

Although the information for the allegedly libelous article was obtained from congressional hearings, the focus of the article was on a project being pursued in Alabama by the plaintiffs, all of whom are Alabama citizens. The defendant obviously knew that the effect of any injury to the plaintiffs' reputation would be primarily focused in Alabama, the plaintiffs' state of residence. *Cf. Calder,* —— U.S. at ——, 104 S.Ct. at 1487. Moreover, as the district court found, Alabama is a "significant" market for the defendant's publications and the defendant actively undertook efforts to maintain its Alabama readership. Finally, although the circulation of the defendant's publications is not of the magnitude of those involved in *Keeton* and *Calder,* we agree with the district court that a monthly circulation in Alabama of over 900 copies of *Federal Times,*[2] combined with

---

1. Interlocutory review of the personal jurisdiction question in this case as one with "substantial ground for difference of opinion" under 28 U.S.C. § 1292(b) was granted prior to the Supreme Court's rejection of the heightened contact standard previously used in this circuit for first amendment cases.

2. The total paid circulation in Alabama for all of ATPC's publications between November 24, 1980 and December 21, 1981 fluctuated between 7,988 and 8,307. When all of the defendant's circulation in Alabama is taken into account, therefore, the significance of the defendant's quantitative contacts with Alabama approaches

the defendant's purposeful efforts to enroll subscribers in the forum state, justifies a finding that ATPC could reasonably anticipate being "haled into court" in Alabama. *Worldwide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980); *Keeton, supra* —— U.S. at ——, 104 S.Ct. at 1481.

Having determined that the subject of this litigation focused on events and parties in Alabama, that Alabama has a significant interest in vindicating the rights of its citizens, and that the defendant has purposefully availed itself of the readership market available in Alabama, we conclude that the lower court did not err in finding that sufficient minimum contacts existed to exercise personal jurisdiction over the defendant. Therefore, the district court's order denying the defendant's motion to dismiss for lack of personal jurisdiction is AFFIRMED.

that of *Hustler* magazine to New Hampshire in the *Keeton* case (sale of ten to fifteen thousand issues in New Hampshire each month).